**LeAnn BOLDEN, Relator,**

v.

**Hon. Harold B. CLAPP, Judge 321st District Court, Smith County, Texas, Respondent.**

**No. 12–88–00073–CV.**

Court of Appeals of Texas, Tyler.

May 23, 1988.

Bert Creel, Tyler, for relator.

Samuel M. George, Rowan, George & Parker, Tyler, for respondent.

PER CURIAM.

LeAnn Bolden and Keith Ray were divorced by decree signed on August 29, 1984. In the decree of divorce, LeAnn was appointed managing conservator of the

couple's then ten-month-old daughter, Megan. Keith was appointed possessory conservator with possession every weekend from Friday evening until Sunday evening and "[a]t all other reasonable times that may be agreed upon by the parties." In this original mandamus proceeding, LeAnn seeks to have vacated temporary orders entered by Respondent Judge Harold B. Clapp appointing the child's paternal grandmother temporary managing conservator pending final resolution of a motion to modify the original decree.

On February 3, 1988, Keith filed a motion to modify the decree in the suit affecting the parent-child relationship. He also sought injunctive relief and temporary orders. In the motion, Keith alleged that (1) LeAnn had voluntarily relinquished care, control, and possession of the child for more than twelve months; (2) temporary orders were necessary because there is a serious, immediate concern for the child's welfare; and (3) the temporary orders requested were in the best interest of the child.

The 321st District Court of Smith County, Texas, the Honorable Harold B. Clapp presiding, entered a temporary restraining order and set the case for a hearing on the temporary matters. A hearing was held on February 9, 10, 11, and 12, 1988, at the close of which Judge Clapp announced that he was appointing Bobbie Huffman, the child's paternal grandmother, temporary managing conservator, and Gladys Coats, the child's maternal grandmother, temporary possessory conservator, subject to the grandmothers' consent to be appointed. LeAnn and Keith were removed from their respective conservatorship positions. A written order to that effect was signed March 10, 1988.

LeAnn now seeks a writ of mandamus from this court to compel Judge Clapp's March 10 order to be vacated and have the child returned to her. She contends that the March 10 order was a clear abuse of discretion and violates Tex.Fam.Code § 14.08(g). The basis for that claim is an alleged lack of evidence to support the entry of temporary orders.

■■■ Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or, in the absence of another adequate remedy, when the trial court fails to observe a mandatory statutory provision conferring a right or forbidding a particular action. *Abor v. Black*, 695 S.W.2d 564, 567 (Tex.1985). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). Stated another way

> The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles.

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–242 (Tex.1985).[1]

■■■ The Relator must establish, and the reviewing court must conclude, that the circumstances of the case, including the law and the facts, permit the trial court to make but one decision, thereby extinguishing any discretion. *Johnson*, 700 S.W.2d at 917–918. A mere error in judgment on the trial court's part, or a disagreement with the trial court's decision on the reviewing court's part is not an abuse of discretion. *Id.* at 918; *see also Downer*, 701 S.W.2d at 242. Absent a conclusion on our part that the circumstances of this case permitted but one decision on Judge Clapp's part, mandamus will not lie.

We look first to the Family Code[2] to ascertain what rules or principles were available for Judge Clapp to follow. Be-

---

1. Although *Downer* was an appeal, it addressed the abuse of discretion standard as applied to the trial court's action of striking the defendant's answer as a discovery abuse sanction. *See* Ray and McKelvey, "The Mandamus Explosion," 28 S.Tex.L.Rev. 413, 418–419 (1987).

2. All references to sections are to the Texas Family Code (Vernon 1986) unless indicated otherwise.

cause Keith had filed a motion to modify the conservatorship and support provisions of the decree, in order to issue temporary orders having the effect of changing the managing conservator, one of two circumstances had to exist. Section 14.08(g). Either there had to be a "serious, immediate question concerning the welfare of the child," or LeAnn, as the managing conservator, must have "voluntarily relinquished the actual care, control, and possession of [the] child for more than 12 months and the temporary order is in the best interest of the child." *Id.* LeAnn contends that there is no evidence of either circumstance and thus the order appointing Bobbie Huffman as the managing conservator is an abuse of discretion.

From our careful review of the record from the hearing it is clear that at least the issue of voluntary relinquishment of care, control, and possession was hotly contested.[3] LeAnn's position was that she never gave up care, control, and possession of the child; rather she simply made arrangements for the child to stay in Tyler with relatives[4] while she attended school in Dallas, and she returned most weekends to visit the child. Further, LeAnn contends that from February 1987 until May 1987 she lived in her mother's home with the child and therefore could not be said to have relinquished care, control, and posses-

sion for at least twelve months prior to Keith's motion.

Keith's position is that LeAnn gave up care, control, and possession of the child at the latest in July 1986 when she moved to Dallas to attend school. He asserts that the child lived with him in his mother's home between five to seven days a week since at least that time, with the child visiting her other grandmother on weekends.

Each side has evidence to support its position. Some of the testimony, particularly that relevant to the amount of time the child allegedly was in Dallas and the period in the spring of 1987 LeAnn allegedly lived in Tyler with her mother, is conflicting. Judge Clapp, as the trier of fact, was authorized to resolve those conflicts and make the credibility choices.

The question of law involved is what constitutes voluntary relinquishment of actual care, control, and possession so as to satisfy the requirement of section 14.-08(g)(2) and thus empowering the trial court to enter temporary orders. As acknowledged by the parties, there is no Texas case law interpreting section 14.08(g)(2). LeAnn contends that relinquishment is the equivalent of abandonment[5] and analogizes the requirements of section 14.08(g)(2) to those for involuntary termination of parental rights under section 15.02. That analogy is inapt. The statutes differ in their provisions and their purposes.[6]

---

**3.** The issue of a serious, immediate question of the child's welfare was also disputed. However, Judge Clapp's closing remarks indicate he was not convinced such a question existed.

**4.** Including her mother, Gladys Coats, Keith and Keith's mother, Bobbie Huffman.

**5.** Apparently this theory derives from discussion by a three judge plurality in *Norman v. Norman,* 683 S.W.2d 548 (Tex.App.—Fort Worth 1985) of the same voluntary relinquishment language as employed in § 14.09(e) (repealed). That decision, however, went on to merely require agreement by the managing conservator in order to constitute "voluntary relinquishment." Further, the Texas Supreme Court reversed the court of appeals judgment for lack of jurisdiction and dismissed the appeal.

**6.** In *Wiley v. Spratlan,* 543 S.W.2d 349, 351–352 (Tex.1976), the Texas Supreme Court explained the difference as follows:

> Suits for conservatorship, possession, and support are governed by Chapter 14 of the Family Code and those matters are determined by the "best interest" test. Section 14.07. Those proceedings are different and have different purposes from termination cases. Decrees under Chapter 14 may be modified or changed from time to time, but the parent still retains some rights in and control over a child. A termination decree, on the other hand, is complete, final, irrevocable. It divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. See Section 15.07. The difference in the proceedings justifies the caution with which courts have characteristically considered termination cases.

*See also Wetzel v. Wetzel,* 715 S.W.2d 387 (Tex. App.—Dallas 1986, no writ). Both cases dealt with the degree and nature of proof required to support a termination.

■ We believe section 14.08(g)(2) requires something less than the showing required by section 15.02. Since the consequences of an action or order under Chapter 14 are not as far-reaching, irrevocable and complete, we conclude that a lesser showing satisfies the voluntary relinquishment requirement of section 14.08(g)(2).

There is support in the record for the conclusion that LeAnn gave up the actual care, control, and possession of the child for at least twelve months prior to the filing of the motion to modify. She certainly relinquished a major portion of her duties and rights under the divorce decree by which she was appointed managing conservator.[7] She did not have possession of the child for at least the five days of the week allotted her under the decree. By all accounts for long periods of time she saw the child no more than weekends, the time allotted by the decree to the possessory conservator. There is also evidence that she did not visit the child even every week and did not seek her return after she quit school and began working. It is undisputed that the child lived in her grandmothers' homes from at least July 1986, and there is evidence that most recently she stayed primarily in the home of Bobbie Huffman. The evidence is conflicting as to what period of time the child stayed with LeAnn in Dallas in early 1987,[8] as it is about whether

and how long LeAnn returned to and stayed in Tyler in the Spring of 1987.[9] Her financial support was primarily from her grandmothers. The child's day-to-day care was primarily handled by the grandmothers, with Keith's participation and LeAnn's input when she was in town. The grandmothers made the day care arrangements and, along with Keith, dropped her off and picked her up there. The child often attended church with Bobbie Huffman. It was Gladys Coats, not LeAnn, who would call about picking up the child on weekends and who picked her up, and it was Gladys who would return the child.

■ It cannot be said that the evidence is such as eliminates the trial court's discretion in this matter. Therefore, we find no abuse of discretion. The orders simply maintain the status quo for the child, whose interests must be the primary concern,[10] until the motion to modify is finally resolved. The child has been, and we must assume will continue to be, well cared for by her grandmothers with whatever assistance LeAnn or Keith choose to provide.[11]

The petition for a writ of mandamus is denied.

7. As managing conservator under the decree she retained the rights, privileges, duties, and powers of a parent (*see* Tex.Fam.Code § 12.04) subject to Keith's rights, privileges, duties and powers as possessory conservator. Tex.Fam.Code 14.02(a) (Vernon 1988 Supp.). Under the decree she had those rights, privileges, duties and powers for five days a week.

8. Keith testified it was five to seven days; his stepfather said it was a few days; his mother said about a week; Gladys Coats' brother-in-law said four to six weeks, maybe less; LeAnn testified it was two to three weeks; and Gladys Coats said it was a couple of weeks.

9. LeAnn stated she lived with her mother and the child full time from the end of February until May 4 or 6; a good friend of Keith's family testified the child never lived with LeAnn between February and May 1987; one of LeAnn's ex-husbands stated LeAnn and the child were at Gladys Coats' home during his three week visit there in April 1987; Keith's girlfriend said the child did not live with LeAnn for more than a weekend in 1987; Keith's stepfather said the

child had been a full time occupant of his home except weekends and had not lived with LeAnn in 1987; a former boyfriend of LeAnn's testified that from February until May of 1987 he saw LeAnn and the child at Coats' one or two times a week; Gladys Coats stated that LeAnn was in her home with the child from late February until early May.

10. *See* Tex.Fam.Code § 14.07(a) (Vernon 1986).

11. The record contains no indication that this arrangement will deny either parent the same access to the child as they had before January 30, 1988, and as no one has been paying any child support during the relevant period in any event, no change is effected in that department. It is not error to appoint as managing or possessory conservator a grandparent who would be affected by any modification, as clearly Bobbie Huffman and Gladys Coats would be. *In Interest of J.W.*, 645 S.W.2d 340 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.).