# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00208-CV

**In re Hope Rampy**

**ORIGINAL PROCEEDING FROM BELL COUNTY**

## M E M O R A N D U M   O P I N I O N

Hope Rampy filed this original proceeding seeking a writ of mandamus to compel the district court to set aside a temporary order in a suit initiated by her ex-husband, Victor Colon-Melendez, to modify the child-custody provisions of their divorce decree. For the reasons explained herein, we conditionally grant relief.

Hope and Victor[1] divorced in 2000. There was one child of the marriage, a daughter, L.C., born in 1998. The divorce decree named Hope and Victor as L.C.'s joint managing conservators, granted Hope the exclusive right to establish the child's primary residence, and awarded Victor possession in accordance with the standard possession order.

In December 2008, Victor filed an original suit seeking to modify the parent-child relationship to grant him, rather than Hope, the exclusive right to establish L.C.'s primary residence. He later filed a motion seeking a temporary order granting him that relief while his modification suit was pending. A hearing was held on January 6, 2009. Central to Victor's claim is the fact that

---

[1] Because several of the witnesses share common surnames, we will refer to them by their first names for clarity.

Hope, currently a Major in the U.S. Army, was ordered to deploy to Iraq for a twelve-month period that began in the latter half of January 2009,[2] requiring her to leave L.C. behind.

The district court heard evidence that Hope decided to leave L.C. in the sole care of her husband and L.C.'s step-father, Mike Rampy, during her twelve-month deployment. Hope and Mike were married in August 2004. Since then, Mike has resided with Hope and L.C., with the exception of a ten-month period in which Hope brought L.C. with her on a temporary assignment in Kansas while Mike remained at what was then the family's home in the Washington D.C. area. In June 2008, Hope was transferred to Fort Hood, whereupon the family moved to their current home in Harker Heights. Hope has been attending an elementary school in the Killeen Independent School District since August 2008, where she has participated in activities including student government and competitive cheerleading.[3] Hope testified to what she perceives as several benefits of leaving L.C. in Mike's care, including preserving continuity in L.C.'s home life, schooling, friends and activities; support services available in the Fort Hood military community for families and children of deployed soldiers; Mike's prior experience in keeping L.C. while Hope was traveling or working late; and the assertion that Mike's current job allowed him to work from home and serve as a stay-at-home dad.[4] Hope also emphasized that the family had set up a laptop computer with a webcam to

---

[2] The precise date of Hope's deployment is not in evidence, although L.C. indicated during her interview with the district court (discussed above) that she thought it was to begin on January 20 or 26. Consistent with L.C.'s statement, Hope's counsel indicated to the district court that Hope was to depart "a couple of weeks" after the January 6 hearing, and Victor, in his mandamus response, states that the deployment began on January 21.

[3] Competitive cheerleading was described as involving tumbling and gymnastics maneuvers, such as flips.

[4] Hope stated that Mike, among other things, walked L.C. to and from the school bus stop each day and made dinner for her in the evenings.

enable L.C. to communicate with her in Iraq, and that the nature of Hope's assignment would permit daily communications. Hope also claimed that Victor had been largely absent from L.C.'s life prior to learning about her impending deployment.

In support of his motion, Victor presented evidence about what he perceives as the benefits of having L.C. live in his home during Hope's deployment. Victor's current household includes wife Jen, whom he married in 2001, and two children of that marriage. The family resides in the Dallas area, near several of the couple's relatives. Among other perceived benefits they described, Victor and Jen testified that they would provide L.C. a room of her own and the opportunity to spend time with her father, half-siblings, and other relatives. They also testified that their local school and community has available activities comparable to those L.C. enjoys in Harker Heights. Victor and Jen also emphasized that Jen could provide womanly guidance for L.C., a prepubescent girl, in her mother's absence.

In addition to this evidence, the district court interviewed L.C. out of the presence of the parties and counsel, but on the record. L.C. indicated that while she loves her father and enjoys seeing him from time to time, she prefers to remain in her current living environment with Mike.

At the conclusion of the hearing, the district court ordered that L.C. would remain with Mike through the end of her current school year,[5] but then would go live with Victor and his family until Hope's deployment ended, with the exception of a two-week leave period in which Hope

---

[5] We take judicial notice that the last scheduled day of classes in the Killeen Independent School District's 2008-09 school year is Friday, June 5. *See Eagle Trucking Co. v. Tex. Bitulithic Co.*, 612 S.W.2d 503, 506 (Tex. 1981); *City of Houston v. Todd*, 41 S.W.3d 289, 301 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (courts of appeals may take judicial notice of facts that are notorious, well-known, or easily ascertainable).

is to return home during the summer. In an attempt to accommodate concerns expressed by L.C. during her interview, the district court ordered that L.C. be allowed to bring her dog, bedroom furniture, and other personal items, as well as the computer and webcam system the Rampys have provided L.C. to use to communicate with her mother in Iraq. The district court did not enter findings of fact and conclusions of law. On April 20, 2009, Hope filed this original proceeding.

Because temporary orders in a suit affecting the parent-child relationship are not subject to interlocutory appeal, mandamus review is appropriate. *See Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991); *In re Vernor*, 94 S.W.3d 201, 210 (Tex. App.—Austin 2002, orig. proceeding). We review a trial court's modification of a joint managing conservatorship for an abuse of discretion. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). A district court abuses its discretion if its decision is unreasonable or arbitrary or if it acts without reference to any guiding principles or rules. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003). The trial court as finder of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Raymond v. Rahme*, 78 S.W.3d 552, 556 (Tex. App.—Austin 2002, no pet.). The trial court may draw reasonable inferences from the evidence, and its findings will not be disturbed on appeal unless the record contains no probative evidence on which the court could base its inferences or the findings are so contrary to the evidence as to be unjust. *Carson v. State*, 117 S.W.3d 63, 66 (Tex. App.—Austin 2003, no pet.). Our review of a trial court's determination of legal principles is much less deferential, and the trial court abuses its discretion if it misinterprets or misapplies the law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). When no findings of fact and conclusions of law are filed, we infer that the trial court

4

made all findings necessary to support its judgment. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *see Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

Hope contends that the district court abused its discretion by rendering a temporary order having the effect of changing the party with the exclusive right to determine L.C.'s primary residence because there is no evidence of any of the statutory prerequisites for such an order. The family code allows a court with continuing, exclusive jurisdiction (as the district court possessed here) to modify an order that provides for the conservatorship, support, or possession of and access to a child, including rendering temporary orders pending resolution of a modification suit. *See* Tex. Fam. Code Ann. §§ 156.001, .006(a) (West 2008). However, the court "may not render a temporary order that has the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child" unless at least one of the followings conditions is met:

> (1)     the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development;
>
> (2)     the person designated in the final order has voluntarily relinquished the primary care and possession of the child for more than six months and the temporary order is in the best interest of the child;  or
>
> (3)     the child is 12 years of age or older and has filed with the court in writing the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child and the temporary order designating that person is in the best interest of the child.

*Id.* § 156.006(b). The district court's temporary order here has the effect of changing the designation of the person having the exclusive right to determine L.C.'s primary residence—it overrides the discretion the divorce decree gave Hope to determine where L.C. lives. *See In re Sanchez*,

5

228 S.W.3d 214, 217-18 (Tex. App.—San Antonio 2007, orig. proceeding) (temporary order that deprives a custodial parent of any discretion inherent in the right to determine the child's primary residence has the effect of changing the designation of the person with the exclusive right to designate the child's primary residence); *In re Ostrofsky*, 112 S.W.3d 925, 929 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (same). Consequently, the district court had authority to render the temporary order only if the evidence supports an implied finding of at least one of the three prerequisites in section 156.006(b).

Subsection (b)(3) cannot be a basis for the district court's order because it is undisputed that L.C. was only ten years of age at the time of the hearing, not twelve years or older. *See* Tex. Fam. Code Ann. § 156.006(b)(3). Nor is there evidence to support an implied finding that the conditions prescribed in subsection (b)(1) exist. Although Victor elicited evidence concerning positive benefits of sending L.C. to live in his household, he did not develop a record that could support a finding that L.C.'s circumstances living with Mike Rampy "would significantly impair the child's physical health or emotional development." *See id.* 156.006(b)(1).[6]

---

[6] When cross-examining Hope and Mike, Victor did attempt to elicit admissions that Mike's job actually required him to travel and that L.C. had occasionally returned home from school to an empty house, but Hope and Mike each denied these allegations, and Victor did not present any affirmative evidence of those facts. Nonetheless, in his response to Hope's mandamus petition, Victor asserts that "Mr. Rampy's job does require travel" and L.C. "has returned from school to an empty house," and cites his *questions* about these alleged facts as record support for the facts' existence. Victor also attempts to rely on asserted facts outside the record, including events allegedly occurring after the hearing. Although Victor has represented himself throughout these proceedings—he professes that he is "deeply committed to doing what is right for [L.C.] and prefer[s] to use the money that might be spent on legal representation on helping [L.C.] with this transition"—we are required to hold him to the same procedural and substantive standards that apply to represented parties. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978). Consequently, we must rely solely on the evidence properly before us. *See, e.g.*, *Tanner v. McCarthy*, 274 S.W.3d 311, 323 n.22 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Cotten v. Cotten*, 169 S.W.3d 824, 827 n.1 (Tex. App.—Dallas 2005, pet. denied).

As for whether the district court's order could be authorized by subsection (b)(2), the evidence is undisputed that Hope has agreed or arranged to leave L.C. in Mike Rampy's care during her twelve-month deployment. On the other hand, it is also undisputed that Hope's deployment had not yet begun, much less exceeded six months, as of the date Victor filed his petition or the date of the hearing and order. In her mandamus petition, Hope does not question that her act of leaving L.C. in Mike's care during her deployment *will be* a "voluntary relinquishment" of L.C.'s "primary care and possession . . . for more than six months" under (b)(2),[7] but argues only that the provision "is clearly not prospective in its language or application." She observes that (b)(2) applies when the person "*has* voluntarily relinquish*ed* the primary care and possession of the child for more than six months," which, in her view, denotes that she must have relinquished care and possession of the child to another at least six months ago. Consequently, she reasons, evidence of a future "voluntary relinquishment" or one that has not yet totaled six months cannot satisfy (b)(2). Victor, in contrast, urges that Hope "voluntarily relinquished [L.C.] to Mr. Rampy for a period longer than 6 months" under (b)(2) by agreeing to leave L.C. in his primary care and possession "fully knowing that she would be deployed for a period of at least twelve (12) months." Our resolution of this dispute turns on construction of (b)(2).

Statutory construction presents a question of law that we review de novo. *E.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We consider the words in

---

[7] And we express no opinion on that issue.

7

context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-626 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," while "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). Our analysis of the statutory text is also informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2)-(3) (West 2005), and consideration of matters including the "consequences of a particular construction." *Id.* § 311.023(5).

Although subsection (2) is one of several family code provisions that condition judicial action on "relinquishment" or "voluntary relinquishment" of a child's care or possession for a specified period of time,[8] the code does not define "relinquishes" or "voluntary relinquishes."

_____

[8] These include the standards governing modification of an order regarding conservatorship or possession of a child, which will govern the ultimate merits of Victor's modification suit. *See* Tex. Fam. Code Ann. § 156.101(3) (West 2008) (court may modify such an order if in the child's best interest and "the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of a child to another person for at least six months"); *see also id.* §§ 156.102(b) (West 2008) (parallel provision in affidavit requirements applicable to certain suits to modify designation of person having the exclusive right to designate the child's primary residence), 153.373(1) (West 2008) (presumption that parent should be appointed child's managing conservator is rebutted if court finds "the parent has voluntarily relinquished actual care, control or possession of a child to a nonparent, licensed child-placing agency, or authorized agency for a period of one year or more, a portion of which was within 90 days preceding the date of [parent's] intervention in or filing of the suit"), 156.409(a) (West 2008) (providing for modification of child-support orders "to provide that the person having physical possession of the child for at least six months" shall have right to receive child support if child's sole managing conservator or joint managing conservator having exclusive right to determine child's primary residence has "voluntarily relinquished the primary care and possession of the

8

"Relinquish" ordinarily means an act of giving up or giving over possession or control of.[9]

Texas courts have construed provisions similar to subsection (2) in a manner consistent with this definition. *See Leighton v. Court*, 773 S.W.2d 63, 64-65 (Tex. App.—Houston [14th Dist.] 1989, no writ) (construing predecessor to family code section 156.101(2)) (mother who "took a leave of absence and gave [her] child to her ex-husband for a year" voluntarily relinquished care and possession of the child for a period exceeding twelve months); *Bolden v. Clapp*, 751 S.W.2d 674, 676-77 (Tex. App.—Tyler 1988, no writ) (parent's leaving child in care of grandmother while away at school for several months held to be a "voluntary relinquishment" of child's care and possession under (b)(2)'s predecessor).[10]

Significantly, in (b)(2), the legislature used the present perfect tense of "relinquish"—"*has relinquished* the primary care and possession of the child"—modified by the prepositional phrase "for more than six months." C. Edward Good, *A Grammar Book* 63-64 (2002) (discussing present perfect verb tense). This usage denotes an act of relinquishment or giving up of

---

child"), 157.007 (West 2008) (affirmative defense to motion for contempt for failure to comply with order for possession of child where movant "voluntarily relinquished actual possession and control of the child" during time encompassing court-ordered period in which respondent allegedly interfered), 157.008 (West 2008) (similar affirmative defense against motion to enforce child support obligations where obligee "voluntarily relinquished to the obligor actual possession and control" of the child), 157.373(a) (West 2008) ("If the relator has by consent or acquiescence relinquished actual possession or control of the child for not less than 6 months preceding the date of filing of the petition for the writ, the court may either compel or refuse to order return of the child.").

[9] *See Webster's Third New International Dictionary* 1918 (1986) ("to give over possession or control of").

[10] *But cf. Bolden v. Clapp*, 751 S.W.2d 674, 676-77 (Tex. App.—Tyler 1988, no writ) (holding that "voluntary relinquishment" for purposes of modifying conservatorship requires a "lesser showing" than the voluntary abandonment that can support involuntary termination of parental rights because its consequences "are not as far-reaching, irrevocable, and complete").

9

the child's primary care and possession that started in the past and has continued for more than six months leading up to the present. *Id.* at 64. ("The perfect tenses show an accomplished fact in relation to a particular point in time in the present, the past, or the future."). Consistent with these observations, our sister courts have construed this type of language to require a past relinquishment of care and possession that has already occurred for a specified period, not one that is anticipated to extend for the specified period to some date in the future. *See Leighton*, 773 S.W.3d at 64-65 (construing parallel language in predecessor to family code section 156.101); *Bolden*, 751 S.W.2d at 676-77; *see also* 2-4 John D. Montgomery et al., *Texas Family Law: Practice and Procedure* § H4.02[5] (2006) (suggesting that, under section 156.101, "[e]ven if the time during which the conservator has relinquished the child has *not yet totaled six months*, the conservatorship may be modified . . . if the relinquishment constitutes a material and substantial change of circumstances.") (emphasis added). If, as Victor suggests, the legislature intended for subsection (2) to apply to a relinquishment of care and possession that will exceed six months sometime in the future, it presumably would have used "is voluntarily relinquishing . . . for more than six months," "will voluntarily relinquish . . . for more than six months," or some other formulation that would reflect that intent. *Mid-Century Ins. Co. v. Tex. Workers' Comp. Comm'n*, 187 S.W.3d 754, 758 (Tex. App.—Austin 2006, no pet.) ("we read every word, phrase, and expression in a statute as if it were deliberately chosen and presume the words excluded from the statute are done so purposefully"). We also observe that Victor's construction of (b)(2) would imply that the person could "voluntarily relinquish" a child's primary care and possession "for more than six months" by giving up care and possession to another person for a period less than six months—or not at all—if

it could be alleged and proven that the person at some point had agreed or intended to relinquish care and possession for more than six months. Such a construction would render (b)(2)'s six-month requirement meaningless. *See* Tex. Gov't Code Ann. §§ 311.021(2) (we presume that the entire statute is intended to be effective), .023(5) (we consider, among other factors, the "consequences of a particular construction."); *cf. In re Kubankin*, 257 S.W.3d 852, 859 (Tex. App.—Waco 2008, orig. proceeding) (rejecting similar argument that "would render the six-month requirement of section 157.373 meaningless").

We conclude that (b)(2) requires a relinquishment of a child's care and possession for more than six months leading up to the present. There is no evidence to support such a finding here. Nor, as we have explained, is there evidence that any of the other prerequisites in family code section 156.006(b) were met. We are bound to apply this statute as written, notwithstanding any equitable or practical considerations that might have informed the district court's ruling. Consequently, we must hold that the district court's temporary order was an abuse of discretion.

Accordingly, we conditionally grant Hope's petition for writ of mandamus and direct the district court to vacate its temporary order. The writ will issue only if the district court fails to take appropriate action in accordance with this opinion.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Filed:   May 26, 2009

11