**Petition for Writ of Mandamus Denied and Majority and Dissenting Opinions filed July 28, 2022.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-22-00230-CV

---

### IN RE T.R.L., Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**311th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-56370**

---

## MAJORITY OPINION

On March 31, 2022, Mother filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Germaine J. Tanner, presiding judge of the 311th District Court of Harris County, to vacate her January 31, 2022 order in a suit affecting the parent-child relationship. We deny the petition.

## BACKGROUND

Mother and Father have one child. The trial court, in a July 21, 2017 final order in a suit affecting the parent-child relationship, named Mother and Father joint managing conservators of the child, with Mother having the exclusive right to designate the primary residence of the child. Father had a possession order, which the parties rarely followed; Mother allowed Father to have the child anytime he asked.

In April 2020, during the early stage of the COVID pandemic, Mother and Father agreed to a "week-to-week" visitation schedule with the child staying with each parent on alternating weeks "during the pandemic or until the summer or until we saw fit for something to change." As an educator, Mother was deemed essential personnel and was working from home. According to Mother, Father, who is a co-pastor at the church his father founded, was not working. Father testified that the basis of the week-to week schedule was so that the child could be with Father while Mother was at work. Father testified about his workdays and during the week and on Sundays. The child was attending a private school associated with the church. The child's school closed after the pandemic started and remained closed through the 2020–2021 school year.

The week-to-week possession lasted until September 2020. Mother and Father agreed to the child living with Father during the week and with Mother on the weekends. The parties changed the schedule because Mother was physically returning to the school where she worked. The child's school was not opening in September 2020 and the child could be with Father while Mother was working.

The child's school did not reopen in September 2020 and there was no virtual instruction. Father arranged for and paid $1,000 a month for one-on-one tutoring for the child with one of the school's teachers. The child was the only student physically at the school and the tutoring took place until the end of the school year in May 2021.

Also, in September 2020, Mother moved in with her mother ("Grandmother"). Mother was not involved in picking up or dropping off the child for weekend possessions. Father picked up the child from school and dropped him off with Grandmother for Mother's weekend possessions. Grandmother took the child to school during Mother's periods of possession. Prior to the pandemic, Father had been providing a driver to take the child to and from school but after the child's school closed, there was no need for a driver to transport the child. Father arranged for the child to participate in extracurricular activities, which included baseball and karate. Father took the child to his activities and paid for them.

Before the pandemic, Mother and Father each took the child to his doctor appointments. However, during the pandemic, only Father took the child to his doctor appointments and made medical decisions about the child. Father also continued to provide the child's health insurance. Mother took the child to a tutor, who worked pro bono, every other Saturday, but did not tell Father. Mother attended some of the child's baseball games and "did fun activities" with the child when she had him on weekends.

Father had the child start his day by listening to the Book of Proverbs in the car on the way to school. Father and the child had lunch together at school. After school, the child did chores with Father to earn 30 minutes of time on the iPad while

3

Father cooked dinner. Afterwards, Father and the child played and said prayers at the end of the day.

There were weekends that Mother was not with the child and would delegate the child's care to her family. Mother told Father to ask Grandmother about the possession schedule. Father continued to pay child support while the child was living with him during the week. Mother paid Grandmother rent. However, Grandmother did not ask Mother for money "for all the things I'm doing for my grandson[.]"

Grandmother contacted Father when the child wanted to go to camp; Father did not respond to Grandmother. However, Father enrolled the child in and paid for summer camps. Mother testified that Father's enrolling the child in summer camps prevented the parties from going back to the "week-to-week" schedule: "In May of 2021 we were trying to do — go back to the week on/week off; but his dad kept enrolling him into summer camps, which was taking him away from me during the week." Mother had the child every weekend during the summer of 2021 that child was not enrolled in summer camps. Mother did not know for how many weeks Father had enrolled the child in summer camps.

On September 3, 2021, Father filed a petition to modify the parent-child relationship and requested temporary orders naming him the conservator with the exclusive right to designate the primary residence of the child. Father alleged that Mother had voluntarily relinquished the primary care and possession of the child for more than six months. After Father had filed the modification proceeding, Mother decided she wanted to return to the schedule that was in place prior to the pandemic with Father having the child every other weekend and every other Thursday. Mother

4

had voluntarily agreed to the child living with Father during week for over a year but stated that she would not have agreed to that arrangement but for the pandemic. Mother testified that the parties' possession agreement superseded the 2017 order until Father filed the modification suit.

The trial court held an evidentiary hearing on Father's request for temporary orders hearing on January 13, 2022. The trial court signed temporary orders on January 31, 2022, finding that Mother had voluntarily relinquished the primary care and possession of the child for at least six months and the new order is in the best interest of the child. The trial court appointed Mother and Father temporary joint managing conservators with Father having the exclusive right to designate the primary residence of the child within Harris County. The trial court further ordered the parties would have possession of the child at mutually agreeable times agreed to in advance or, in the absence of mutual agreement, by the terms of the possession order set forth in the temporary orders. The trial court also ordered that any provision in the 2017 order would remain in full force and effect unless specifically modified by the temporary orders.

<h2 style="text-align:center">STANDARD OF REVIEW</h2>

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) (orig. proceeding). Trial courts have no discretion in determining what the law is or applying the law to the facts. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875–76 (Tex. 2021) (orig. proceeding). An appellate court may not substitute its judgment for the trial court's determination of factual or other matters committed to the trial court's discretion,

even if the mandamus court would have decided the issue differently. *In re State Farms Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding); *see also C.J.C.*, 603 S.W.3d at 811 ("[A]n appellate court should defer to the trial court's factual determinations supported by the record."). The relator must establish that the trial court could reasonably have reached only one decision, but did not reach that decision. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *see also In re Texan Millwork*, 631 S.W.3d 706, 711 (Tex. 2021) (orig. proceeding) (per curiam) (explaining that trial court abuses its discretion when decision is contrary to only permissible view of evidence).

Temporary orders, entered while a motion to modify in a suit affecting the parent-child relationship is pending, are interlocutory with no statutory appeal. *In re Ostrofsky*, 112 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). Therefore, temporary orders are subject to mandamus review. *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (orig. proceeding) (per curiam).

## ANALYSIS

Mother contends that the trial court abused its discretion by finding that she had relinquished possession of the child. While a suit for modification is pending, a court has continuing, exclusive jurisdiction to modify an order that provides for the conservatorship, support, or possession of and access to a child, including rendering temporary orders pending resolution of a modification suit. *See* Tex. Fam. Code Ann. § 156.006(a). The court "may not render a temporary order that has the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child" unless, for purposes of this proceeding, the following condition is met: "the person designated in the final order has voluntarily

6

relinquished the primary care and possession of the child for more than six months" and the temporary order is in the best interest of the child. *Id.* §156.006(b)(2). "Relinquish" ordinarily means an act of giving up or giving over possession or control of. *In re Rampy*, No. 03-09-00208-CV, 2009 WL 10720707, at *4 (Tex. App.—Austin May 26, 2009, orig. proceeding) (mem. op.) (citing Webster's Third New Int'l Dictionary 1918 (1986)).

The testimony of Mother and Father establishes that they rarely followed the 2017 final order as to possession and that they further agreed in September 2020 that Father would have possession of the child during the week and Mother would have possession of the child on weekends. This agreement lasted for over a year and according to Mother, superseded the 2017 final order. It was not until after Father had filed the modification action and the child had resumed in-person learning that Mother wanted to return to the possession schedule that the parties had been using by agreement before the pandemic.

The evidence presented at the hearing showed that Father continued to pay child support while the child was living with him during the week. Father arranged for the child to receive educational instruction during the pandemic and paid $1,000 a month for that instruction. Father enrolled the child in extracurricular activities and summer camps and also paid for those activities. Mother did not pick up the child for weekend possessions or return him afterwards. She also did not take the child to or pick him up from school. Mother no longer took the child to his doctor appointments. Mother did not pay Grandmother for all that she was doing for the child. Mother delegated the possession schedule to Father and Grandmother.

Mother did not bear financial responsibility for the child and was not involved in making day-to-day decisions for the child.

This is sufficient to establish that Mother relinquished possession of the child. *See Leighton v. Court*, 773 S.W.2d 63, 64–65 (Tex. App.—Houston [14th Dist.] 1989, no writ) (holding that mother voluntarily relinquished primary care and possession of child where parents had affirmative agreement that child would live with father for at least "a year" while she pursued plans to become a stewardess); *Bolden v. Clapp*, 751 S.W.2d 674, 676–677 (Tex. App.—Tyler 1988, orig. proceeding) (holding that mother, who was appointed managing conservator in divorce decree, voluntarily gave up care, control, and possession of child when mother moved to Dallas to attend school and left child in Tyler; grandmothers primarily handled child's day-to-day care with father's participation; and temporary orders merely maintained status quo).

It is undisputed that Mother and Father reached a mutual agreement for Father to have possession of the child during the week. Mother believed that the arrangement was in the best interest of the child. The dissent, however, argues that Mother's relinquishment of possession of the child was "forced" due to the pandemic. A parent may face a change in her personal circumstances as the result of events beyond her control such as illnesses, job changes, or family emergencies, which may compel that parent to "relinquish" control and possession of her child. Although COVID altered the lives of many people, it did not "force" changes in circumstances any more than other life events.

The record shows that, after the child began to live with Father, Father continued to have financial responsibility for the child, along with Grandmother, and

8

made most decisions for the child and Mother showed no interest in returning to the pre-April 2020 possession schedule until Father sought to have the trial court enter a new order based on the possession schedule followed by the parties after September 2020. Under these circumstances, the trial court could have concluded that Mother voluntarily relinquished control and possession

Mother has not shown that the only decision the trial court could have reached was that she had not voluntarily relinquished control and possession of the child. *See Texan Millwork*, 631 S.W.3d at 711; *Walker*, 827 S.W.2d at 840. We hold that the trial court did not abuse its discretion by appointing the Father the joint managing conservator with the exclusive right to designate the primary residence of the child.

## CONCLUSION

Relator has not established that she is entitled to mandamus relief. Accordingly, we deny relator's petition for writ of mandamus.


PER CURIAM

Panel consists of Justices Wise, Poissant, and Wilson. (Poissant, J., dissenting).

9